*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★ ★

**OPINION**

No. 04-08-00721-CR

**EX PARTE MARCELLEUS JHEKWUOBA ANUNOBI**

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. CM-003458
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Catherine Stone, Justice
Karen Angelini, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:    December 31, 2008

AFFIRMED

Marcelleus Jhekwuoba Anunobi appeals the "full house arrest" condition of his pre-trial bail,

asserting it is unreasonable. Based on our review of the record, we hold the trial court did not abuse

its discretion in imposing home confinement as a condition of Anunobi's pre-trial release on bail.

We affirm the trial court's order setting the conditions of bail.

**FACTUAL AND PROCEDURAL BACKGROUND**

Pursuant to an arrest warrant, Anunobi was arrested on August 9, 2008 for committing theft

in the amount of $20,000 to $100,000, by fraudulently billing Medicaid.[1] *See* TEX. PENAL CODE

ANN. § 31.03(a), (e)(5) (Vernon Supp. 2008). Anunobi, a dual citizen of the United States and

---

[1] Our consideration of this appeal is limited to the record before us. Based on that record, Anunobi has not yet been indicted by a grand jury.

Nigeria, was initially held without bail. His counsel filed a petition for writ of habeas corpus requesting that bail be set. Before the habeas corpus hearing, bail in the amount of $500,000 was set by agreement. Anunobi was subsequently released on the $500,000 bond with the special conditions of "full house arrest" with GPS monitoring; he surrendered his two passports. On August 25, 2008, the Honorable Magistrate Judge Andrew Carruthers held a hearing on Anunobi's petition for writ of habeas corpus; the only modification was removal of the home confinement restriction. Four days later, the State filed a "Motion to Increase and Amend Conditions of Bond" alleging that Anunobi had submitted additional fraudulent Medicaid bills while out on bail; it sought an immediate increase in the bond amount to $1,000,000 and the imposition of additional conditions. The trial court granted the State's request that same day, increased the bond to $1,000,000, re-imposed full home confinement with GPS, and set the matter for a hearing. Anunobi was taken back into custody. Anunobi's counsel filed another habeas corpus petition alleging the bond was excessive. After a hearing on September 17, 2008, the trial court reduced the amount of bail to $750,000, and imposed the conditions of "full house arrest with GPS monitoring," "no billing Medicaid or insurance companies illegally," and no commission of other crimes. Anunobi now appeals the bond condition of home confinement.

## ANALYSIS

The purpose of pre-trial bail is to secure the defendant's attendance at trial, and the power to require bail should not be used as an instrument of oppression. *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. [Panel Op.] 1980). Excessive bail is prohibited by both the United States and Texas Constitutions. *See* U.S. CONST. amends. VIII, XIV; *see also* TEX. CONST. art. I, §§ 11, 13. Article 17.15 of the Code of Criminal Procedure provides a framework for setting a defendant's bail:

1.   The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2.   The power to require bail is not to be so used as to make it an instrument of oppression.

3.   The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15 (Vernon 2005).  Factors to be considered in applying these rules include:  (1) the length of the sentence; (2) the nature of the offense; (3) the defendant's work record, family ties, and length of residency; (4) prior criminal record; (5) conformity with previous bond conditions; (6) other outstanding bonds; and (7) aggravating factors involved in the offense. *Ex parte Rubac,* 611 S.W.2d 848, 849-50 (Tex. Crim. App. [Panel Op.] 1981).

It is well established that courts have the inherent power to place restrictive conditions on the granting of bail.  *Estrada v. State*, 594 S.W.2d 445, 446 (Tex. Crim. App. [Panel Op.] 1980). The trial court's discretion to set the conditions of bail is not, however, unlimited.  A condition of pre-trial bail is judged by three criteria:  it must be reasonable; it must be to secure the defendant's presence at trial; and it must be related to the safety of the alleged victim or the community. *Ex parte Anderer*, 61 S.W.3d 398, 401-02 (Tex. Crim. App. 2001) (making a distinction between pre-trial bail and bail pending appeal); *see* TEX. CODE CRIM. PROC. ANN. art. 17.40(a) (Vernon Supp. 2008) (authorizing trial court to impose "any reasonable condition of bond related to the safety of a victim of the alleged offense or to the safety of the community" in order to "secure a defendant's attendance at trial"); *see also Burson v. State*, 202 S.W.3d 423, 425-26 (Tex. App.—Tyler 2006, no pet.)

(interpreting §17.40(a) to mean a single bail condition may be solely related to the safety of the victim or community, and need not necessarily relate to all three criteria mentioned in *Anderer*). The conditions of bail "may not impinge unreasonably upon rights guaranteed by the Constitution." *Anderer*, 61 S.W.3d at 402 (quoting *Estrada*, 594 S.W.2d at 447). In that respect, the courts must be mindful that one of the purposes of release on bail pending trial is to prevent the infliction of punishment prior to conviction. *Anderer*, 61 S.W.3d at 405. However, the primary purpose for setting a bond is to secure the defendant's presence in court. *Ex parte Garcia*, 100 S.W.3d 243, 245 (Tex. App.—San Antonio 2001, no pet.). Home confinement and electronic monitoring are expressly permitted conditions of pre-trial bail in Texas. TEX. CODE CRIM. PROC. ANN. art. 17.44 (a)(1) (Vernon 2005).

We review a trial court's pre-trial bail decision for an abuse of discretion. *Rubac*, 611 S.W.2d at 850; *Garcia*, 100 S.W.3d at 245. The appellant bears the burden to show the trial court abused its discretion in setting the amount of bail or imposing a specific condition. *Rubac*, 611 S.W.2d at 849; *Garcia*, 100 S.W.3d at 245. The appellate court may not simply substitute its judgment for that of the trial court; however, an abuse of discretion review requires more than simply deciding whether the trial court acted arbitrarily or capriciously. *Cooley v. State*, 232 S.W.3d 228, 234 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In reviewing a trial court's bond decision, the appellate court measures the trial court's ruling against the same factors it used in ruling on bail in the first instance. *Id.*

At the September 17, 2008 hearing on Anunobi's habeas petition, testimony by Anunobi, his wife, and his pharmacy technician developed the following basic facts. Anunobi is a dual citizen of the United States and Nigeria. He had previously surrendered two passports to the State, and subsequently surrendered a third, expired, passport at the State's request. Anunobi has been a United

States citizen for approximately 18 years, and has resided in San Antonio for the last seven years in the same house. His wife, who has the same dual citizenship, is a pediatrician who recently completed her residency. They have two young children who were born in Texas. Anunobi and his wife both testified that, although they have relatives in Nigeria, they intend to continue living in the United States and to raise their children here. Anunobi stated that he holds three degrees – as a pharmacist, zoologist, and a medical doctor. He previously worked as a pharmacist at Wal-Mart, HEB and K-Mart pharmacies before taking over the pharmacy in the Methodist Plaza Building in the medical center area of San Antonio in June 2007. Anunobi owns 60%, and his wife owns 40%, of the Advanced Doctor's Prescribed Pharmacy ("ADPP"); Anunobi operates the pharmacy and his wife does not take an active role in the pharmacy. At the time of the hearing, Anunobi was aware that Medicaid and Humana have vendor holds on any future payments to ADPP.

In addition to testimony, the State introduced into evidence the search warrant affidavit and the arrest warrant affidavit detailing the alleged Medicaid fraud committed by ADPP through a series of fraudulent Medicaid billings for multiple prescriptions that were neither prescribed for, nor received by, several identified patients during a period from November 2007 through May 2008. The search warrant affidavit describes one example of a patient being unable to fill a prescription at a different pharmacy because the system showed the prescription had already been filled. Finally, the State introduced an August 29, 2008 affidavit by Sergeant Henry Griffin, an investigator assigned to the Texas Attorney General's Medicaid Fraud Control Unit. In that affidavit, Griffin asserts that upon removal of the home confinement restriction on his bond, on August 25, 2008, Anunobi went back to work at ADPP pharmacy and submitted additional fraudulent Medicaid billings for the same patients listed in the arrest warrant for theft. The affidavit further states that the next day, August 26, 2008, Anunobi again submitted fraudulent Medicaid claims, but for two different patients for

whom such prescriptions were not prescribed. At the September 17, 2008 habeas hearing, Anunobi admitted that on August 25 he "ran" a few Medicaid billings, but explained he was merely checking "to see whether everything is still working" on his computer; he stated that he intended to reverse the billing within the 10 to15 day grace period provided by Medicaid for a "return to stock" such as when a prescription is filled but never picked up by the patient. Because he was arrested on August 29, he did not have the opportunity to reverse the Medicaid billings.

The record of the habeas hearing clearly shows the trial judge re-imposed the home confinement condition not only to ensure Anunobi's appearance at trial, but to protect the victims and community from the possibility of future fraudulent Medicaid billings by ADPP. During the course of the habeas hearing, the trial judge expressly stated, "And it seems to me that if we had kept the original condition of bond for full-house arrest, we wouldn't be here and he would still be on bond." Given Anunobi's actions during the brief period in which home confinement was lifted, we cannot conclude that re-imposition of the restriction is unreasonable. While we are mindful that pre-trial bail conditions must not constitute punishment, based on the record before us, which includes evidence that Anunobi engaged in the same criminal conduct that led to his arrest when he was not subject to house arrest, we conclude the trial court did not abuse its discretion in imposing full home confinement as a condition of his bail, as expressly authorized by article 17.44(a)(1).

The trial court's order setting the conditions of bond is affirmed.

Phylis J. Speedlin, Justice

Publish